## Yeich's Appeal

· *Hon. Roy P. Hicks* and *Arthur A. Maguire,* for appellant.

*Cletus C. Kilker, Cyril C. Kilker,* and *J. F. Mahoney,* for appellee.

PAUL, J., November 14, 1938.—This is an appeal by Raymond Yeich, a professional employe, from the decision of the School Directors of Cass Township School District dismissing him as a teacher in that district. On June 6, 1938, the school board passed a resolution that Raymond G. Yeich be dismissed as a professional employe in the School District of Cass Township and that his contract be terminated for the following reasons, to wit:

"1. That the said Raymond G. Yeich is wilfully and persistently negligent in that he refuses to fill in pupils' schedule cards as requested by the principal of the high school.

"2. That he has wilfully and persistently neglected to perform corridor duties assigned to him.

"3. That he gave quarterly tests to pupils in defiance of the high school principal's orders not to give such tests without the approval of the high school principal.

"4. That on many occasions he has left the school room before the close of the school day in defiance of the principal's orders not to leave before the close of the school day."

At the same meeting the school board passed another resolution as follows:

"That a public hearing on the dismissal of Raymond G. Yeich and the termination of the contract of Raymond G. Yeich, a professional employe of said School District of Cass Township, will be held in the directors' room, in the Cass Township High School Building, at Primrose, Cass Township, Schuylkill County, Pa., on Saturday,

June 18, 1938, at 6:30 p.m., at which time and place the said Raymond G. Yeich will be given an opportunity to be heard either in person or by counsel, or both, by the Board of School Directors of the School District of Cass Township."

Mr. Yeich was served with a copy of the above charges. Subsequently, he was given a hearing at the time and place appointed. On June 23, 1938, five days later, there was another meeting of the school board at which the following action was taken:

"That the charges of wilful and persistent negligence preferred against Mr. Raymond G. Yeich are fully and amply sustained by the evidence produced before the Board of School Directors of the School District of Cass Township held on June 18, 1938, and that accordingly the said Raymond G. Yeich be dismissed as a professional employe of said school district, and that his contract as a professional employe be terminated."

From this decision of the School Directors of Cass Township, Raymond G. Yeich appealed to this court, whereupon a hearing was had de novo.

Under the School Code of May 18, 1911, P. L. 309, a single act of negligence or a single violation of the School Code was sufficient ground for a dismissal. Under the Act of April 6, 1937, P. L. 213, however, the negligence must be wilful and persistent. The word wilful ordinarily means intentional and conscious and the word persistent ordinarily implies firm and persevering in a course, design or resolution. It is to be noted that the charge against plaintiff is not wilful and persistent disobedience because that is not a reason under the Act of 1937 for termination of a contract, but the charge is wilful and persistent negligence. The testimony, therefore, must be examined in order to determine whether or not the charges against plaintiff are sustained. Plaintiff was first charged as follows:

"That the said Raymond G. Yeich is wilfully and persistently negligent in that he refuses to fill in pupils'

schedule cards as requested by the principal of the high school."

Mr. Murray, principal of the high school, testified that in May 1937 he had instructed all the teachers that a teacher of a home room group would be responsible for filling in the pupils' individual schedule cards. The cards were to be filled in, in the handwriting of the teacher. In the fall of that year the cards were given to the different teachers. When they were returned, Mr. Murray noticed that Mr. Yeich himself had only filled in 11 out of 39 cards in his own handwriting. He thereupon requested Mr. Yeich to personally do the cards over. Although so requested, Mr. Yeich did not do so. Mr. Murray then requested another teacher to copy the cards. Mr. Yeich explained that the cards were to be returned to the principal's office the same day he received them and that he did not have time to fill them all in and, furthermore, he felt that it would be a good lesson in penmanship to have the students fill them in. He stated, however, that before the cards were returned to the principal's office he personally checked each card as to its accuracy. The substance of this charge, therefore, is that Mr. Yeich did not copy the pupils' schedule cards in his own handwriting. The point is not whether they were accurate or not. In other words, in this instance Mr. Yeich neglected to do as he was requested. The second charge against Mr. Yeich is:

"That he has wilfully and persistently neglected to perform corridor duties assigned to him."

Mr. Yeich, during the passing of classes, was to remain near the doorway of his room to supervise the pupils and to guide the children in such a manner that they would not enter the boys' room and to keep them away from the drinking fountain. Mr. Yeich was an instructor in physics, chemistry, and biology. On occasions Mr. Murray testified that he found that Mr. Yeich was not attending to corridor duties but was in his class room. The first time Mr. Murray noticed this was the early part

of October 1937, and then again on two periods on October 19, 1937, and two periods on October 20, 1937. A few days later he called this matter to the attention of Mr. Yeich, who said he would attend to them in the future. Mr. Murray stated, however, that he did not attend to the corridor duties on November 17th, December 13th, January 11th, January 12th, March 30th, and April 5th. In other words, on an average of less than once a month, Mr. Yeich neglected this duty. Mr. Yeich taught 25 periods per week but was on duty 32 periods. He is charged with neglecting a duty on an average of less than once in 128 times. There was also one instance where, during the period of the passing of classes, Mr. Murray noticed boys coming from the boys' toilet. Mr. Murray requested Mr. Yeich to stop the boys from coming from the boys' toilet, but Mr. Yeich stated he could not inasmuch as he had just disobeyed that rule himself. There was no other occasion when a similar occurrence was reported. Mr. Yeich explained his absence from corridor duties. He said it was not intentional but that at times he was not able to attend to corridor duties due to the fact that he was putting away apparatus that he used in laboratory experiments during the prior period. The fact of the matter is that he is only charged with neglecting corridor duty on an average of less than once every month. This charge is not very serious especially when the duties of Mr. Yeich are taken into consideration. The third charge is:

"That he gave quarterly tests to pupils in defiance of the high school principal's orders not to give such tests without the approval of the high school principal."

Mr. Murray testified that, according to their local school rule, tests must be approved by him before they are given to the pupils. He further testified that in the preceding May, at a meeting of the teachers, he announced that due to a change in the periods for tests from six weeks to ten weeks the tests should be made longer. At the time of the first quarterly tests when Mr. Yeich

submitted his tests, Mr. Murray told him that the tests were too short and that he should lengthen them. Mr. Yeich, however, said that he would not have time to lengthen them, whereupon he was told by Mr. Murray that he could not approve them. The next morning Mr. Murray again met Mr. Yeich and asked him if he had changed his tests and Mr. Yeich replied that he had not and that he was going to give them as they were, which he did. Mr. Murray then sent for Mr. Campion, the supervising principal, who, upon learning that Mr. Yeich had given two tests, instructed him not to give any more without the approval of Mr. Murray. Thereafter, Mr. Yeich submitted all his tests to Mr. Murray and secured his approval before giving them to the pupils. It is significant that Mr. Yeich does not deny the substance of Mr. Murray's testimony, but, on the other hand, in effect admits that the two tests he gave were too short by testifying that he had realized that their test of ability was not sufficient and had lengthened them.

The fourth charge is:

"That on many occasions he has left the school room before the close of the school day in defiance of the principal's orders not to leave before the close of the school day."

In May of 1938, Mr. Yeich had been assigned to supervisor of the locker room from 3:10 to 4 o'clock. On three days, when he was on lunchroom duty, Mr. Yeich told Mr. Murray that he would not take care of that assignment whereupon it became necessary for Mr. Murray to put a substitute teacher in his place. The next week, on May 16, 1938, he again walked into Mr. Murray's office and, in the presence of the supervising principal, Mr. Campion, told him that he again would not take care of that assignment. He said that he was going out and get the sunshine and go home and as he was leaving the room he turned to Mr. Murray and told him not to forget to report it. Prior to leaving he was told by Mr. Campion that the school day there was from 8 a.m. to 4 p.m.

This matter cannot be decided on the individual complaints, but the four charges as a whole must be taken into consideration. No separate charge is very serious in itself, but when the four charges are considered together it presents a different aspect. A school system cannot successfully function where there is not proper coöperation between the teachers and the principal, nor where the carefully planned instructions of the principal are not carried out by the teachers. The complaint that a teacher neglects to carry out one request of a principal that in itself is insignificant in nature may be overlooked. In fact under the Act of 1937, supra, it is not ground for dismissal. But when a teacher knowingly persists in not carrying out a series of minor duties, then the conduct of that teacher is no longer to be considered as insignificant but it amounts to wilful and persistent neglect. Mr. Yeich was requested, for reasons that were believed by the principal to be to the advantage of the school system of Cass Township, to fill out in his own handwriting the pupils' schedule cards. Mr. Yeich filled out 11 and the balance were filled out by his pupils. When later requested to fill them out in his own handwriting he neglected to do so and the principal had to assign another teacher to perform that task. This in itself is not a very serious matter. Yet it shows that Mr. Yeich neglected to do as he was requested by the principal of the school in the first place and wilfully continued in that negligence of duty. The neglect of corridor duty was not so serious in itself. The excuse given by Mr. Yeich that at times he was prevented from doing corridor duty by the fact that he was busy putting away laboratory apparatus was no doubt true, but it is not altogether justifiable. Mr. Yeich should have so arranged his work that he would have had his apparatus put away before the class period was over. This corridor assignment was while classes were passing and included the duty of supervising pupils as they passed, the duty to keep the students from the drinking fountain and from the boys' toilet. This supervision was without a doubt

necessary and should have been taken care of, especially since times had been set apart when, by permission from an instructor, they could go to the drinking fountain or to the toilet. Arrangements had also been made whereby an instructor could be relieved of classroom duty. There is no record of exactly how many times Mr. Yeich neglected that duty. The number of times reported is not very numerous, and, therefore, the charge is not very serious. The most serious part of this charge is the fact that Mr. Yeich himself violated the ruling by using the boys' toilet during the passing of classes. When his attention was directed to the fact that some of the boys were violating the rule, he told Mr. Murray that he would not stop the boys since he himself had violated the rule. The carrying out of that duty would result in a quiet and orderly passing of the pupils between classes. The neglect of that duty was certain to cause confusion and commotion.

The last charge is the most serious. Mr. Murray had assigned Mr. Yeich to locker-room duty from 3:10 to 4:00 p.m. The end of the school day was 4 p.m., but from 3:10 to 4 p.m. it was the custom of some of the pupils to be in the locker room. The principal of the school, therefore, believed that it was advisable to have an instructor present to supervise the pupils during this period. It happened that on Monday, Wednesday, and Friday, Mr. Yeich was also assigned to lunchroom duty. On these days he refused to perform locker-room duty and so informed Mr. Murray, whereupon it became necessary to have a substitute teacher put in his place. The following week he again, in the presence of Supervising Principal Campion, refused to perform that duty.

The neglect to properly fill out the pupils' schedule cards occurred in the beginning of the school term. The neglect to perform corridor duties occurred from October to April. The neglect to properly give two tests to his students occurred in the beginning of the school year. The neglect to perform locker room duty occurred near the end of the school year. It is to be noted that in each

instance Mr. Yeich substituted his own wishes in place of the instructions he had received and in each instance that which he neglected to do was not done out of ignorance but it was a wilful violation. In the case of the schedule cards, he knew he was disregarding his instructions, and further than that, when he was later requested to do the work properly, he refused. In the case of the quarterly tests, Mr. Murray told him not to give the tests, but he did give two of them. In the case of the corridor duty, he told Mr. Murray that he would not stop the boys from violating a rule he had violated himself. In the case of not performing locker room duties, he knew those duties were assigned to him and he told Mr. Murray he would not perform those duties. In other words, his action in each case was with full knowledge of what he was doing and, therefore, wilful and amounted to a neglect of duty. A teacher should not be deprived of his position merely for a trivial neglect of duty. The purpose of the Teachers' Tenure Act was to protect teachers from that penalty. The neglect of Mr. Yeich is not confined to one single, immaterial instance, but covers a series of instances throughout the year. There is no doubt that the actions of Mr. Yeich were wilful. There is no doubt that that which he did was a neglect of duty. And there is no doubt that throughout the year he has persisted in that wilful neglect of duty.

The objection of plaintiff that the School Directors of Cass Township did not follow the proper procedure in regard to his hearing is without merit. It is true that in the first resolution the school directors passed they plainly showed their intentions, but there can be no objection to the fact that the plaintiff, in accordance with a subsequent resolution passed at the same meeting, later received proper notice and that there was a proper hearing.

And now, November 14, 1938, the action of the School Directors of Cass Township in terminating the contract of Raymond Yeich, a professional employe, is affirmed and Raymond Yeich is discharged as a professional employe of Cass Township.